COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS



IN THE INTEREST OF A.B., A CHILD.

 

§


 


§


 


§


 


§


 


§


 


 § 


No. 08-07-00307-CV
 


Appeal from the


65th District Court


of El Paso County, Texas


(TC#2006CM6363)


O P I N I O N


 A.M.B., Appellant and biological mother of A.B., appeals the trial court's determination that
her points of appeal of the termination of her parental rights are frivolous. We affirm in part and
reverse in part the trial court's frivolousness finding. We affirm the judgment of the trial court with
regard to its termination order.

I. BACKGROUND


 A.B. was born on September 28, 2006. Four days later, the Texas Department of Family and
Protective Services (the "Department") filed its Original Petition for Protection of a Child, for
Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship. The
Department sought temporary orders appointing it the temporary sole managing conservator of A.B. 
The Department also sought termination of A.M.B.'s parental rights, should reunification of A.B.
with A.M.B. fail, because, according to the Department, A.M.B. knowingly placed the child, or
knowingly allowed her to remain, in conditions or surroundings that endangered A.B.'s physical and
emotional well-being and engaged in conduct, or knowingly placed her with persons who engaged
in conduct, that endangered her physical or emotional well-being.

 On September 4, 2007, the trial court held a final hearing on the issue of termination of the
parent-child relationship. At the hearing, the Department requested leave to proceed on Texas
Family Code subsections 161.001(1)(M) and (N), instead of subsections 161.001(1)(D) and (E), as
originally pled. (1) Following the hearing, the trial court entered an order of termination. Applying the
"clear and convincing evidence" standard, the trial court found that the termination of the parent-child relationship was in the best interest of A.B. The trial court also found that A.M.B. had had her
parent-child relationship terminated with respect to another child, based on a finding that A.M.B.'s
conduct at that time had been in violation of subsections 161.001(1)(D) or (E) of the Texas Family
Code. In addition, the trial court found that A.M.B. constructively abandoned A.B. while she was
in the permanent or temporary managing conservatorship of the Department for not less than six
months and that: (1) the Department had made reasonable efforts to return A.B. to A.M.B.; (2)
A.M.B. had not regularly visited or maintained significant contact with her; and (3) A.M.B. had
demonstrated an inability to provide A.B. with a safe environment.

 Thereafter, A.M.B. filed a Notice of Points on Appeal of Termination of Parental Rights in
which she stated grounds of appeal and requested that the trial court find that the grounds were not
frivolous. In her first point, A.M.B. argued that, in the case of a parent with a cognitive disorder,
termination of the parent-child relationship on the basis of failure to comply with a court order or
tasks assigned by the Department should require a showing that the orders and requirements "were
communicated in a manner developmentally appropriate and capable of being understood by the
parent." A.M.B.'s second and third points were that the evidence was legally and factually
insufficient to show that termination was in the best interest of A.B., because the Department made
no showing that the tasks required of A.M.B. were communicated in an effective manner,
considering the parent's cognitive disorder. A.M.B.'s fourth point was that, where the grounds for
termination are that the parent exposed the child to abuse based on neglect and the parent has a
cognitive disorder, the party seeking termination must show that it communicated with the parent
in an effective, developmentally-appropriate manner and that the parent was unwilling or unable to
perform. A.M.B.'s fifth point was that there was factually insufficient evidence to terminate the
relationship based on neglect of the child. A.M.B.'s sixth point was that there was legally
insufficient evidence to terminate the relationship, because there was no evidence of harm to A.B.
at the time she was removed from A.M.B. at the hospital.

 On October 15, 2007, the trial court held a hearing on A.M.B.'s points of appeal, pursuant
to section 263.405(g) of the Texas Family Code. The Department argued that termination was based
on the grounds that A.M.B.'s parent-child relationship with her other two children had been
previously terminated and that she had constructively abandoned A.B. Accordingly, the Department
argued that the appeal was frivolous, because the points of appeal addressed grounds for termination
that had not been relied upon by the trial court. (2) The Department entered the termination order
concerning A.B. and A.M.B. as an exhibit. The trial court held that A.M.B.'s grounds for appeal
were frivolous.

II. DISCUSSION


A. Review of Frivolousness Determinations


 Section 263.405 of the Family Code provides the procedure for appeal of an order that
terminates parental rights. A party wishing to appeal a final order must file points of appeal with the
trial court. See Tex. Fam. Code Ann. § 263.405(b). The trial court must hold a hearing and
determine whether the appeal is frivolous, (3) as provided in the Civil Practice and Remedies Code,
which states that "[i]n determining whether an appeal is frivolous, a judge may consider whether the
appellant has presented a substantial question for appellate review." Tex. Civ. Prac. & Rem. Code
Ann. § 13.003(b).

 We review a trial court's finding that a party's points of appeal of a final order are frivolous
under an abuse of discretion standard. In re M.N.V., 216 S.W.3d 833, 834 (Tex. App.--San Antonio
2006, no pet.). A party's appeal is initially limited to review of the trial court's frivolousness
finding. See In re K.D., 202 S.W.3d 860, 865 (Tex. App.--Fort Worth 2006, no pet.) (stating that
section 263.405(g) limits the scope of appellate review to the trial court's determination that the
appeal is frivolous). In other words, before we may consider the substantive merits of an appeal
from an order terminating parental rights in which, as here, a frivolousness finding was made, we
must first determine whether the trial court properly found the appeal to be frivolous. Lumpkin v.
Department of Family & Protective Servs., 260 S.W.3d 524 (Tex. App.--Houston [1st Dist.] 2008,
no pet.). Moreover, an "appellate court may not consider any issue that was not specifically
presented to the trial court in a timely filed statement of the points on which the party intends to
appeal . . . ." Tex. Fam. Code Ann. § 263.405(i).

B. A.M.B.'s Arguments on Appeal


 A.M.B. abandons some of the grounds for appeal offered in the trial court and seeks to add
new grounds. A.M.B. waives appeal of her fourth, fifth, and sixth trial-court points, and purports
to pursue only her first three points before this Court. A.M.B. first argues that the Department, in
order to demonstrate that it has made reasonable efforts to return the child to the mother, pursuant
to section 161.001(1)(N) of the Texas Family Code, should be required to prove that its efforts to
do so were "communicated in a developmentally appropriate manner where a parent is known to
possess cognitive deficits." A.M.B.'s second issue on appeal is that, because the Department
possessed information that A.M.B. had "cognitive deficits," the Department should have been
required to demonstrate that "reasonable accommodations for the mother's cognitive deficits had
been attempted and were unsuccessful in preserving the parent-child relationship." Finally, A.M.B.
argues that the evidence was factually insufficient to support termination on the grounds of best
interest of the child, because A.M.B. possesses "cognitive deficits" and there was no evidence that
she had been provided services in a "developmentally appropriate manner."

 Despite A.M.B.'s apparent claim that the first three issues which she raised before the trial
court and the three issues posed to this Court are the same, it appears that only one of the issues is
similar, to wit, whether the evidence was factually sufficient to support a finding that termination
is in the child's best interest, where the mother is cognitively impaired. We may not consider any
issues that were not specifically presented to the trial court. See Tex. Fam. Code Ann. § 263.405(i);
In re C.B.M., 225 S.W.3d 703, 705-06 (Tex. App.--El Paso 2006, no pet.). We therefore consider
only the factual-sufficiency issue in this proceeding.

C. Frivolousness of A.M.B.'s Factual-Sufficiency Issue


 With regard to this issue, counsel for A.M.B. made the argument at the hearing to determine
frivolousness that there were allegations that A.M.B. suffered from a cognitive disorder and that,
with regard to the finding of best interest, he wished to have the appellate court determine "who has
the burden of dealing with that." The Department did not address the evidentiary sufficiency of best
interest, but instead argued that A.M.B.'s points concerning the service plan were frivolous, because
failure to comply with the service plan was not the basis for the termination. After hearing the
arguments of A.M.B. and the Department and receiving the Department's evidence, the trial court
made the following statement concerning the sufficiency of evidence as to best interest:

 The grounds utilized in [the termination] suit are not grounds that make reference to
the service plan. In the other ground, though, the best interest ground, that is part of
the information that comes in for the Court to consider, ultimately, whether the best
interest are [sic] served by granting the termination. And in that respect, the service
plan does come into play.


 The issue has been raised whether or not the cognitive disorder that might be
present when the respondent was presented with such service plans, whether that
would factor in, or should have been factored in and proven in order to move onto
the next stage, whether or not the respondent mother understood the service plan and
her responsibilities under it.


 The Court recalling that particular trial, in so far as the service plan portion
of it is concerned, that was a very minimal portion of the entire basis under which the
best interest was ultimately determined by the Court. So that the Court, at this time,
taking the whole cause as a whole, does find that that particular issue concerning
cognitive disorder and the service plan, in the scheme of things, and the overall
presentation of evidence in reference to the best interest would make that point a
frivolous point, as it's really not directly in point, and whatever reference it does have
is a very minimal consideration.


 The particular evidence supporting the best-interest finding was not presented at the hearing,
nor is it apparent in the termination order itself, which was the sole exhibit entered at the hearing. 
Looking only to the reporter's record and the clerk's record relating to the hearing, we are unable to
determine whether the point of appeal was frivolous. For this reason, we conclude that the trial court
erred in finding the point frivolous. We will consider the entire appellate record to determine
whether the evidence was factually sufficient to support the best-interest finding. See In re M.N.V.,
216 S.W.3d at 835, disposition on merits, 2007 WL 56605 (Tex. App.--San Antonio Jan. 10, 2007,
no pet.) (finding that point of appeal was not frivolous and ordering parties to file briefs on the
merits). (4)

D. Factual Sufficiency


 Before parental rights may be terminated, a petitioner must establish by clear and convincing
evidence that (1) the respondent parent has committed one or more of the statutory acts or omissions
and (2) termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001(1), (2); In
re E.M.E., 234 S.W.3d 71, 72 (Tex. App.--El Paso 2007, no pet.). Clear and convincing evidence
means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief
or conviction as to the truth of the allegations sought to be established. Tex. Fam. Code Ann.
§ 101.007. The Texas Supreme Court has recognized several factors to consider in determining
whether termination is in a child's best interest. Holley v. Adams, 544 S.W.2d 367, 372 (Tex. 1976). 
These include: (1) the desires of the child; (2) the emotional and physical needs of the child now and
in the future; (3) the emotional and physical danger to the child now and in the future; (4) the
parental abilities of the individuals seeking custody; (5) the programs available to assist those
individuals to promote the best interest of the child; (6) the plans for the child by these individuals
or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts
or omissions of the parent which may indicate that the existing parent-child relationship is not
proper; and (9) any excuse for the acts or omissions of the parent. Id.

 These factors are not exhaustive, and no single consideration is controlling. A fact finder is
not required to consider all of them. Id. Undisputed evidence of just one factor may be sufficient
in a particular case to support a finding that termination is in the best interest of a child. In re C.H.,
89 S.W.3d 17, 27 (Tex. 2002). On the other hand, the presence of scant evidence relevant to each
Holley factor will not support such a finding. Id.

 The Holley factors focus on the best interest of the child, not the best interest of the parent. 
Dupree v. Texas Dep't of Protective & Regulatory Servs., 907 S.W.2d 81, 86 (Tex. App.--Dallas
1995, no writ). We indulge in a strong presumption that the best interest of the child will be served
by preserving the parent-child relationship. Wiley v. Spratlan, 543 S.W.2d 349, 352 (Tex. 1976). 
In reviewing the record, we keep in mind that the evidence establishing a statutory ground for
termination may also be probative of the best-interest issue. C.H., 89 S.W.3d at 28.

 At the final hearing, the Department introduced into evidence certified copies of the
termination orders concerning A.M.B.'s other two children, which were signed September 15, 2006. 
Those termination orders recited that the court had found, by clear and convincing evidence, that
A.M.B.: (1) knowingly placed or knowingly allowed the children to remain in conditions or
surroundings which endangered their physical or emotional well-being; (2) engaged in conduct, or
knowingly placed the children with persons who engaged in conduct, which endangered the physical
or emotional well-being of the children; and (3) failed to comply with court-ordered actions
necessary for the return of the children from the managing conservatorship of the Department. The
trial court found that the termination of A.M.B.'s parent-child relationship was in the best interests
of the two children.

 Kaysie Reinhardt testified on behalf of the Department in her capacity as the supervising
caseworker for A.B. Reinhardt testified that A.M.B. was contacted by her caseworker, Paula Anaya,
when Anaya and a technician went to A.M.B.'s address on August 17, 2007, to engage her in
services and determine what A.M.B.'s plans were. Reinhardt testified that A.M.B. yelled at the
caseworker and technician through the door and refused to meet with them.

 A family service plan was filed on November 27, 2006. At the service-plan meeting, A.M.B.
and the Department went over the details of the service plan. A.M.B. was told that she needed to
comply with the service plan, that she needed to keep in contact with the Department, and that she
had to comply with all the orders or recommendations made concerning services from the Texas
Department of Mental Health and Mental Retardation ("MHMR"). A.M.B.'s attorney informed her
of the importance of obtaining services at MHMR and of staying in touch with the Department's
caseworker.

 According to the information contained in the Department's file, A.M.B. had not complied
with the family-service plan, nor had she contacted the Department to engage in services. In
addition, she had not visited A.B. or maintained any significant contact with her. A.M.B. also never
expressed any wish, to Reinhardt's knowledge, that she wanted A.B. to be returned to her. A.M.B.
had not supported A.B. financially in any way since she was placed in foster care. Reinhardt also
testified that A.B. had been placed in foster care with her two siblings and had established a bond
with them. Reinhardt believed that A.B. did not have a bond with A.M.B., because A.M.B. had not
been with her. Reinhardt believed that termination was in A.B.'s best interest. Reinhardt did not
believe that A.M.B. could take care of A.B.

 On cross-examination, Reinhardt was asked about A.M.B.'s mental-health issues, and she
responded that she believed that A.M.B. was bipolar. A.M.B. had been in the Department's foster-care system herself when she was a child. A.M.B. had been abused both sexually and physically by
her father, and she had been in many different residential treatment settings and different psychiatric
settings. Reinhardt noted that MHMR had tried to engage A.M.B. in services several times, but that
A.M.B. does not follow through with services and is "often times very unstable."

 Reinhardt was also asked the reason for the Department's intervention in the case. Reinhardt
stated that the Department received an intake while A.B. was in the hospital. The hospital was
concerned that A.M.B. was unstable and had been aggressive with the medical staff. The
Department determined that it needed to remove A.B., based on A.M.B.'s previous history and the
prior endangerment to A.M.B.'s other two children.

 Reinhardt was also asked what steps the Department had taken with A.M.B. with regard to
her mental-health issues. Reinhardt testified that the Department and A.M.B. had had the service-plan meeting in November 2006 and that it had tried to get A.M.B. to follow through with services. 
A.M.B. was told that she needed to comply with MHMR services and that she had to keep in contact
with the Department, and the details of the service plan were reviewed with her. However, the
Department was unable to successfully engage A.M.B. in any services after that meeting. The
Department's caseworker had attempted to work with MHMR to re-engage A.M.B. in services
through MHMR; however, A.M.B.'s case had been closed at MHMR, because she would not remain
on her medication and was not consistent with her services.

 The Department had difficulty locating A.M.B., because she moved frequently. The
Department eventually located A.M.B. after the Department received information concerning another
individual with special needs who had previously been in the Department's foster-care system. 
Reinhardt testified that the previous client had alleged that A.M.B. was her upstairs neighbor and
that A.M.B. had taken her social security payments. After receiving this information, A.M.B.'s
caseworker and a technician visited the address to check on A.M.B. and assess the situation. As
discussed above, A.M.B. would not allow the caseworker into the apartment, refused to meet with
her, and yelled obscenities at her.

 The Department also entered as an exhibit the transcript of A.M.B.'s testimony at the
November 3, 2006, hearing held pursuant to section 262.201 of the Family Code. At that hearing,
A.M.B. testified that she was the mother of A.B. She identified A.B.'s father and testified that he
had been staying at her apartment. A.M.B. was asked whether she remembered slashing the father's
clothing with a knife. A.M.B. replied that she did not, but she stated that the father had stolen a lot
of her stuff, including all of the things for the baby. A.M.B. denied having tried to stab the father,
but admitted that she had pleaded guilty to making a terroristic threat against the father and had
received a sentence of time served. A.M.B. testified that she did not have a good relationship with
A.B.'s father. She also testified that the father used to sell marijuana and crack cocaine, that she
heard that he was on probation, and that he consumed drugs and alcohol while on probation.

 A.M.B. stated that she needed to buy furniture for her apartment. She did not have a
telephone, but had other utilities. She did not have food or a crib set up for the baby, because she
had not had the baby. She currently had a relationship with a man who was "not necessarily my
boyfriend. He's more like my husband," whom she had known for a year. A.M.B. refused to
provide the man's name or his occupation. She testified that she was not working, because she
received social security checks and could not work, because, if she did so, she would no longer
receive checks.

 A.M.B. admitted that she had not seen A.B. since the Department had taken custody of the
child. According to A.M.B., she did not contact the Department to see A.B., because she did not
have any money for a telephone. A.M.B. was asked whether she currently had a caseworker assigned
to her from MHMR. According to A.M.B., her MHMR caseworker had quit, and she had lost
contact with her. A.M.B. stated that, if the court asked her to, she would go back to MHMR for
services and take her medication every day. However, she maintained that she would not do
anything unless God asked her and would not do anything, if God did not want her to do it. A.M.B.
stated that she knew what God wanted her to do; however, she refused to describe it, because God
allegedly told her to keep it to herself.

 A.M.B. also testified concerning the prior termination of her parental rights for her two other
children. She admitted that she failed to attend some of her parenting classes. She also admitted that
she did not complete her individual therapy. A.M.B. explained that she stopped taking her
medication because she was pregnant, and she was unable to comply with the court's orders, because
she had been in jail. A.M.B. believed that foster care was a good place for A.B., because she did not
have any furniture in her apartment, and that she would like for A.B. to stay in foster care until she
set up her apartment. She later stated that she wanted to take A.B. home with her.

 On appeal, A.M.B. argues that the evidence was factually insufficient, because the evidence
relating to the Holley factors is either non-existent, weak, or favors her. On the contrary, the
evidence showed that A.M.B. was uninterested in A.B. and was very likely unable to care for her. 
The evidence is undisputed that A.M.B. did not have any contact with, or seek to have any contact
with, A.B. since the Department obtained conservatorship. A.M.B. provided no financial support
for A.B. Despite warnings of the need to do so, A.M.B. refused to comply with the family-service
plan, including the requirements for parenting and anger classes and treatment from MHMR. 
A.M.B. refused to let the Department know where she was living and, when located, yelled at the
Department's caseworker and technician and refused to meet with them. In addition, there was
evidence that A.M.B. had a history of violence, having been arrested and jailed for making a
terroristic threat to A.B.'s father with a knife.

 With regard to A.B., the evidence showed that she had been placed in a foster home with her
two sisters, A.M.B.'s other children, and had bonded with them. The Department's plan for A.B.
was for adoption by the foster parents. Reinhardt testified as to her belief that adoption by the foster
parents would provide A.B. with a safe and permanent home and that the proposed adoption was in
A.B.'s best interest.

 As to the final factor, any excuse for acts or omissions of the parent, A.M.B. argues that it
was known that she had a cognitive disorder or mental illness and that there was no evidence that
"the introduction [of] more aggressive case management might not have resulted in treatment which
would ameliorate mother's mental health conditions." A.M.B. cites no authority requiring the
Department to make such a showing, but argues that this Court should simply create a new rule. It is not the role of this Court to legislate. Moreover, the evidence offered at the final hearing
by the Department established that it had attempted to assist A.M.B., but was unable to do so,
because her actions precluded any assistance. The evidence was that MHMR closed A.M.B.'s case,
because she would not participate in its program and would not take her prescribed medication. 
Despite being aware of the requirements for services, A.M.B. did not participate in any such
services. A.M.B. did not stay in contact with the Department, and the Department was unable to
locate her for an extended period of time, because she moved frequently and did not provide the
Department with contact information. The Department was able to locate A.M.B. only after it
received information that A.M.B. lived upstairs from a previous recipient of Department services
and had allegedly taken that individual's social security payments. When A.M.B. was located, she
refused to allow the Department's caseworker access to her home, and she cursed at the caseworker
through her door.

 The evidence offered by the Department was factually sufficient to support the trial court's
finding that termination of A.M.B.'s parent-child relationship was in the best interest of A.B. (5) We
overrule this issue.

III. CONCLUSION


 We affirm in part and reverse in part the trial court's frivolousness finding. We affirm the
trial court's judgment with regard to the termination order.


 KENNETH R. CARR, Justice


October 9, 2008


Before Chew, C.J., McClure, and Carr, JJ.

1. A.M.B. does not raise this issue on appeal.
2. As noted, the Department requested leave to proceed at the final hearing on Texas Family Code subsections
161.001(1)(M) and (N). Appellant alleges in her brief that the trial court's file did not reflect this change at the time
appellate counsel was appointed. During the hearing on her points of appeal, counsel for A.M.B. explained that his
points of appeal were based on a telephone description of the grounds for termination given by A.M.B.'s trial counsel. 
However, the termination order denotes subsections 161.001(1)(M) and (N) as grounds for termination.
3. See Tex. Fam. Code Ann. § 263.405(d)(3).
4. The parties have previously submitted briefs that address the trial court's best-interest finding.
5. The termination order also terminated the parent-child relationship between A.B. and her father. The father
has not appealed that order.